**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5521-16T2

IN THE MATTER OF P.A.

_____

Submitted October 25, 2018 – Decided January 17, 2019

Before Judges O'Connor and Whipple.

On appeal from the New Jersey Department of Human Services, Division of Developmental Disabilities.

William E. Anderson, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Human Services (Melissa H. Raksa, Assistant Attorney General, of counsel; James A. McGhee, Deputy Attorney General, on the brief).

PER CURIAM

P.A. is an adult client of the New Jersey Division of Developmental

Disabilities (Division). He has resided in a Division-funded residential facility

for a number of years. He appeals from the Division's July 11, 2017 final

agency decision, which adopted the recommended decision of an administrative review officer.

P.A. mounts three principal contentions. He challenges the Division's authority to require him to contribute toward the cost of his care. He further claims that, even if he is obligated to contribute, the Division's method of calculating his contribution is erroneous. Finally, he claims the Division's method of calculating the amount he must pay for a guardianship fee and a burial trust fund is erroneous. After reviewing the record and applicable legal principles, we affirm.

In general, an adult client receiving Division-funded services is responsible for all necessary costs of his care and maintenance, see N.J.S.A. 30:4-24(6); N.J.A.C. 10:46D-2.1(f), but the Division in fact requires that a client pay only a percentage share commensurate with his income. See N.J.S.A. 30:4-60a; N.J.A.C. 10:46D-2.2(c) and (d); N.J.A.C. 10:46D-3.1.

P.A. receives unearned income in the form of Social Security benefits (benefits). Consistent with N.J.A.C. 10:46D-3.1, the Division has required and P.A. has contributed only a portion of his benefits to the Division to pay for the cost of his care. N.J.A.C. 10:46D-3.1 provides a formula the Division is to

use to calculate what an adult client who does not have dependents must contribute; P.A. does not have any dependents.

Specifically, N.J.A.C. 10:46D-3.1(b) mandates such an adult client contribute seventy-five percent of his disposable monthly income toward the cost of his care. Further, as much as six percent of his total gross annual income may be used toward a guardianship fee. See N.J.A.C. 10:46D-3.1(f). P.A.'s parents serve as his guardians. N.J.A.C. 10:46D-3.1(g) provides that an individual may contribute as much as ten percent per month of his disposable income toward a burial trust until the burial contract is paid in full.

In September 2016, P.A. submitted an appeal letter to the Division contesting the method used to determine his contribution to the cost of his care. Unsatisfied with the Division's response, in November 2016, P.A.'s guardians and Division representatives met to discuss the cost of P.A.'s care in an informal conference. During the conference, the guardians also asserted the Division incorrectly calculated P.A.'s contribution to his guardianship fee.

The Division staff advised the guardians that, first, in accordance with N.J.A.C. 10:46D-3.1(b), seventy-five percent of P.A.'s disposable monthly income was being used toward the cost of his care. Second, consistent with N.J.A.C. 10:46D-3.1(f), P.A. was permitted to use up to six percent of his total

3

gross annual income for the provision of a private guardianship. In 2016, P.A.'s total gross annual income was $15,564.

To determine the specific contributions P.A. was required to pay pursuant to N.J.A.C. 10:46D-3.1(b) and (f), the Division staff subtracted from P.A.'s monthly gross income of $1297 a six percent guardianship fee of $77.82 ($1297 x .06), as well as his monthly personal needs allowance of $40, leaving P.A. a monthly disposable income of $1179.18. From the latter figure, the Division determined P.A. owed $884.38 per month to the Division for his care ($1179.18 x 75%), and P.A. retained $412.62 per month for himself.

During the conference, the guardians asserted the guardianship fee should have been calculated after deducting from P.A.'s gross monthly income his personal needs allowance and his contribution toward his care, which would have resulted in him retaining $432.07 per month for himself. The guardians also claimed the Division lacked any authority to require P.A. to contribute to his care; it is not clear from the record what the guardians' basis was for this claim. The guardians demanded P.A. be refunded for any contributions he made for his care during the previous decade.

Following the conference, P.A. requested he be permitted to contribute to a burial trust fund, pursuant to N.J.A.C. 10:46D-3.1(g)(4). The Division

4

approved, allowing P.A. to contribute up to ten percent of his disposable monthly income to a burial trust fund. An irrevocable burial trust fund was subsequently opened on his behalf. P.A. thereafter claimed the Division was deducting too much from his income to fund this trust. Notwithstanding N.J.A.C. 10:46D-3.1(g)(4) states a burial trust fund allowance is to be deducted before the contribution to care amount is calculated and removed, P.A. contended the burial trust fund allowance should have been calculated by taking ten percent of P.A.'s disposable income after the amount he was to contribute toward his care had been deducted.

In December 2016, a Community Services Administrative Practice Officer of the Division issued a report rejecting all of P.A.'s contentions. In April 2017, a Division administrative review officer submitted a recommended opinion, in which it found the Division correctly calculated P.A.'s contributions to his care, guardianship fee, and burial trust fund, finding all calculations adhered to applicable regulations. The recommended opinion was adopted as a final agency decision by the assistant commissioner of the Division of Developmental Disabilities. This appeal ensued.

On appeal, P.A. contends N.J.S.A. 30:4-60(b) precludes the Division from requiring P.A. to contribute toward his care, because there was no "prior

annual formula promulgated by the Department of the Treasury."  He seeks the return of all money he has paid toward his care.  He also contends the guardianship fee and the contribution to the burial trust fund must be determined by calculating these costs "last."

"Appellate courts have 'a limited role' in the review of [agency] decisions."  In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)).  To reverse, an appellate court must find that the agency decision was arbitrary, capricious, or unreasonable. In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013).  A court may intervene where it is "clear that the agency action is inconsistent with its mandate," or if the agency's decision is unsupported by substantial evidence in the record.  Ibid. (quoting In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10:85-4.1, 117 N.J. 311, 325 (1989)).

N.J.S.A. 30:4-60 provides in pertinent part:

> b. If the Department of Human Services determines that the person has a developmental disability and is eligible for functional services from the Division of Developmental Disabilities, the department, using a formula of financial ability to pay as promulgated annually by the Department of the Treasury, shall determine if the person with a developmental disability has sufficient income, assets, resources or

A-5521-16T2

estate to pay for the person's maintenance as fixed by the department, or is able to make any payment towards the person's maintenance, or if the person's chargeable relatives or other persons chargeable by contract are able to pay the person's maintenance or make any payment toward the person's maintenance on the person's behalf.

[(emphasis supplied).]

P.A. asserts that, since 2010, in contravention of N.J.S.A. 30:4-60(b), the Department of Treasury has not promulgated a formula of financial ability to pay. Therefore, P.A. reasons, because the Division has not had a formula to determine how much an adult client must contribute toward his care, the Division lacked authority to assess any costs against him, entitling him to a refund of any contribution he has made toward his care. We disagree.

N.J.S.A. 30:4-60a states the Department of Human Services shall adopt regulations pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -31, "concerning the . . . determination of patient liability to contribute to the cost of care and maintenance pursuant to [N.J.S.A.] 30:4-60." In accordance with N.J.S.A. 30:4-60a, the Division adopted various regulations, one of which establishes the formula to calculate an adult client's contribution to his care, including the client's contribution toward his guardianship fee and a burial trust fund. See N.J.A.C. 10:46D-3.1. In accordance with the authority

this regulation provided to it, the Division properly assessed the subject costs and contributions about which P.A. complains.

We have considered P.A.'s claim the Division did not calculate these costs and contributions in accordance with the regulatory formula, and have determined his arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION